UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 09-053-DCR |
| V. | ) ) | |
| JAMEL LAMAR WHITE, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Defendant Jamel While is currently serving a 39-month term of imprisonment for multiple supervised release violations. [Record Nos. 50, 58] He originally pleaded guilty to several charges on March 27, 2009. [Record No. 5] They included interference with commerce by robbery in violation of 18 U.S.C. § 1951(a); brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 824(c)(1)(C)(i). [*Id.*] White was sentenced on December 11, 2009, by Senior United States District Judge Karl S. Forester to 120 months' imprisonment, followed by a 4-year term of supervised release. [Record No. 27]

White initially violated the terms of his supervised release in December 2017, and the undersigned revoked his supervision and imposed a term of imprisonment of 12 months and one day, to be followed by a 4-year term of supervised release. [Record No. 40] Upon release, White again violated the terms of his supervised release in July 2019, and the Court revoked

his supervision and imposed a 15-month term of imprisonment and 4-year term of supervised release. [Record No. 50] That Judgment allowed White to self-report to the Bureau of Prisons ("BOP") on October 28, 2019. [*Id.*] However, prior to his report date, White violated his supervised release conditions a third time and was sentenced to a 24-month term of imprisonment, to be followed by a 10-year term of supervised release, on November 1, 2019. [Record No. 58] The sentences imposed for the July 2019 violations and the October 2019 violations are to run consecutively. [*Id.*]

This Court denied White's previous compassionate-release motion on May 6, 2020, due to his failure to meet 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirements. He has now submitted a letter, which will be construed as a renewed motion for a sentence reduction.[1] In addition to contending that he has met the exhaustion requirements, he requests compassionate release due to his mother's alleged health conditions and the spread of COVID-19 at FCI Gilmer, where he is housed. White's current motion will be denied because he has not met Section 3582(c)(1)(A)'s requirements for the relief being sought.

**I.**

The compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A), permits a court to reduce a sentence previously imposed if "three substantive requirements" are satisfied. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020).[2] One of those requirements—

---

[1] White's letter was not filed in the record but will be filed contemporaneously with this Order. All references to it will be styled as: [Letter, p. 1].

[2] A prisoner may file a motion for a sentence reduction "after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *United States v. Alam*, 960 F.3d 831,

consistency with applicable policy statements issued by the Sentencing Commission—is not applicable when a prisoner directly files a motion, as White did here. *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). Accordingly, "district courts now face two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction." *United States v. Hampton*, --- F.3d ----, No. 20-3649, 2021 WL 164831, at *1 (6th Cir. Jan. 19, 2021) (citing *Jones*, 980 F.3d at 1106; *Ruffin*, 978 F.3d 1006–07). If both requirements are not met, a Court may deny the motion. *United States v. Elias*, No. 20-3654, --- F.3d ---, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021).

### A. Extraordinary and Compelling Reasons

Pursuant to the First Step Act of 2018, the Sixth Circuit has concluded that this Court is no longer bound to apply the policy statement definitions of "extraordinary and compelling reasons" to White's motion. *Jones*, 980 F.3d at 1109. Instead, it "ha[s] discretion to define 'extraordinary and compelling' on [its] own initiative." *Elias*, 2021 WL 50169, at *2. However, because they can be useful in resolving these motions, the Court will utilize "the framework provided by the application notes to Section 1B1.13 of the United States Sentencing Guidelines" in assessing White's motion. *United States v. Abney*, 2020 WL 7497380, at *2 (E.D. Ky. Dec. 21, 2020).

White argues that two primary "extraordinary and compelling reasons" justify his early release: his mother's illness and the corresponding need for additional family assistance and

---

832 (6th Cir. 2020) (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). White alleges that he submitted a letter to his warden but has not received a response, so the Court may proceed to the merits of his motion. [Letter, p. 1]

the potential spread of COVID-19 at FCI Gilmer. In support of the first reason, he seeks release to support his mother and stepfather by either attending his mother's medical appointments or gaining employment so his stepfather may attend those appointments. [Letter, p. 1] Without further evidence, the Court has limited ability to assess White's family circumstances. But under the useful framework of the policy statements, release for family circumstances is limited to incapacitation of a "caregiver of the defendant's minor children," the children themselves, or "the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 n. 1(C)(i)–(ii). While the Court is sympathetic to White's circumstances, it agrees that for a family circumstance to be "extraordinary and compelling," it must involve the incapacitation of a caregiver, child, spouse, or partner.

For his second reason, White argues that FCI Gilmer's COVID-19 safety protocols—which he contends are not sufficient to prevent the spread of the disease—warrant release. However, he does not allege that he suffers from any medical condition that places him at risk of severe illness were he to contract COVID-19. Absent any medical evidence, the Court agrees that "speculation as to . . . whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release." *United States v. Shah*, No. 16-20457, 2020 U.S. Dist. LEXIS 73313, at *4–5 (E.D. Mich. April 22, 2020). And while his concerns regarding CVOID-19 are legitimate, the BOP is actively working to prevent the spread of COVID-19[3] and has begun the process of

---

[3]   *A BOP COVID-19 Overview*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/overview.jsp (last visited January 28, 2021).

administering COVID-19 vaccinations to staff and inmates.[4] Thus, the Court concluded that White has not met his burden to demonstrate "extraordinary and compelling reasons" justifying release.

### B. Section 3553(a) Factors

In addition to the foregoing reasons, White has not demonstrated that the sentencing factors outlined in 18 U.S.C. § 3553(a) support his early release. At the time of his first violation, White was given a sentence at the bottom end of the 12- to 18-month guidelines range to account for his mitigating characteristics. [Record No. 40] But when he violated his terms of supervised release a second time, the Court concluded that White had not taken advantage of opportunities to receive substance abuse treatment. Accordingly, it sentenced him to a 15-month term of imprisonment (i.e., the middle of the non-binding range) and allowed him 30 days to resolve childcare issues. [Record No. 50]

When White committed four additional supervised release violations prior to his report date, the Court imposed a 24-month term of imprisonment after considering *inter alia* White's history, the significant number of supervised release violations White had committed, and the seriousness of his original offense. In determining an appropriate sentence, the Court's primary concern was protecting the public from an individual with a dangerous history of crime involving drug abuse and firearms. In his current motion, White only argues that he is

---

[4] The BOP is presently working with the CDC and a public-private partnership established by the federal government, known as Operation Warp Speed, to ensure that the BOP remains prepared to administer the COVID-19 vaccine to inmates as soon as it is available. The Court has been advised that, as of January 8, 2021, doses of vaccine have been administered to over 6,000 staff and 4,500 inmates and that, as of January 4, 2021, doses of vaccine have been delivered to 48 facilities.

- 6 -

"willing to work on [his] rehabilitation" and that he "will undergo inpatient rehabilitation." [Letter, p. 2] However, the Court considered the effectiveness of White's drug treatment during both 2019 supervised release hearings and determined it did not warrant a lower sentence. White has not given the Court any reason to change that conclusion, and his sentence continues to be supported by the relevant sentencing factors.

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant White's motion for a sentence reduction is **DENIED**.

3. The Clerk of Court is **DIRECTED** to file a copy of White's letter in the record.

Dated: January 29, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky